ATTORNEY GENERAL LOVING HAS ASKED ME TO RESPOND TO YOUR RECENT REQUEST FOR AN ATTORNEY GENERAL OPINION REGARDING THE AUTHORITY OF A LOCAL BOARD OF EDUCATION TO ADOPT A DRESS CODE FOR TEACHERS. BECAUSE YOUR QUESTION MAY BE ANSWERED BY REFERENCE TO CONTROLLING STATUTES AND CASE LAW, THIS OFFICE HAS DETERMINED YOUR REQUEST SHOULD BE ANSWERED THROUGH THIS INFORMAL LETTER.
THE DISCUSSION WHICH FOLLOWS IS NOT AN OFFICIAL OPINION OF THE ATTORNEY GENERAL. RATHER, THE ANALYSIS AND CONCLUSIONS, WHILE SOLELY MY OWN, HAVE BEEN REACHED AFTER CAREFUL RESEARCH OF THE QUESTIONS YOU HAVE RAISED.
IN YOUR LETTER YOU ASKED, IN EFFECT, THE FOLLOWING QUESTIONS:
 1. DOES A LOCAL BOARD OF EDUCATION HAVE AUTHORITY TO ADOPT A DRESS CODE FOR EMPLOYEES?
 2. CAN A TEACHERS' UNION REQUIRE NEGOTIATION OF DRESS CODE POLICY BETWEEN THE UNION AND THE BOARD OF EDUCATION?
ALTHOUGH LOCAL SCHOOL BOARDS CANNOT POINT TO ANY SPECIFIC STATUTORY PROVISION TO SUSTAIN AN ACTION FOR ADOPTING A DRESS CODE, BROAD AUTHORITY CAN BE FOUND IN THE SCHOOL BOARD ENABLING ACT FOUND AT 70 O.S. 5-117 (1991). THE STATUTE STATES:
 "THE BOARD OF EDUCATION OF EACH SCHOOL DISTRICT SHALL HAVE POWER TO:
1. ELECT ITS OWN OFFICERS;
 2. MAKE RULES AND REGULATIONS, NOT INCONSISTENT WITH THE LAW OR RULES AND REGULATIONS OF THE STATE BOARD OF EDUCATION, GOVERNING THE BOARD AND THE SCHOOL SYSTEM OF THE DISTRICT(.)" 70 O.S. 5-117 GIVES THE BOARD THE AUTHORITY TO MAKE THE RULES AND REGULATIONS GOVERNING THE SCHOOL SYSTEM. LIKE ALL OTHER GOVERNMENTAL BODIES CREATED BY STATUTE, SCHOOL BOARDS POSSESS ONLY THAT POWER DERIVED FROM STATUTORY ENACTMENT AND MAY NOT EXERCISE UNRESTRICTED AUTHORITY OVER PERSONS. SECTION 5-117 STATES THAT THE RULEMAKING POWER IS ONLY AVAILABLE IF SUCH RULES ARE CONSISTENT WITH THE LAW. IF A DRESS CODE POLICY IS CONSISTENT WITH BOTH STATE AND FEDERAL LAW, A RULE REGARDING PERSONAL APPEARANCE MAY BE PERMISSIBLE.
THE OKLAHOMA SUPREME COURT DISCUSSES LOCAL SCHOOL BOARDS' RULEMAKING POWER IN INDEPENDENT SCHOOL DISTRICT NO. 8 V. SWANSON, 553 P.2D 496, (OKLA.1976). ALTHOUGH THE FACTUAL SITUATION IN THIS CASE CONCERNED THE CONSTITUTIONALITY OF A SCHOOL BOARD PASSING A RULE REGARDING STUDENT HAIR LENGTH, THE LIMITATIONS ON THE POWERS OF A SCHOOL BOARD WERE OUTLINED BY THE COURT AS FOLLOWS:
 "(T)HE SCOPE OF A SCHOOL BOARD'S RULEMAKING AUTHORITY IS LIMITED TO ADOPTING RULES THAT HAVE A REASONABLE CONNECTION WITH THE EDUCATIONAL FUNCTION ENTRUSTED TO IT BY THE PUBLIC."
ID. AT 501.
 "A RULE IMPOSING SUCH A SIGNIFICANT INVASION INTO THE PRIVATE LIVES OF CHILDREN AND THEIR PARENTS REQUIRES A SHOWING OF GREATER JUSTIFICATION AND DEMONSTRABLE NEED BY THE SCHOOL BOARD THAN ONE REGULATING PURELY INSCHOOL APPEARANCE, SUCH AS A RULE ABOUT LENGTHS OF SKIRTS . . . CERTAINLY THE SCHOOL BOARD IS EMPOWERED TO ADOPT AND ENFORCE THOSE RULES WHICH ARE NECESSARY TO CREATE AND PRESERVE A PROPER ATMOSPHERE FOR LEARNING TO TAKE PLACE(.)"
ID. AT 503.
CONSEQUENTLY, IT APPEARS THAT A BOARD OF EDUCATION MAY PRESCRIBE DRESS CODE RULES IF THE BOARD CAN ESTABLISH A REASONABLE CONNECTION BETWEEN SUCH RULES AND THE EDUCATIONAL FUNCTION AND THAT SUCH RULES "ARE NECESSARY TO CREATE AND PRESERVE A PROPER ATMOSPHERE FOR LEARNING TO TAKE PLACE." THE QUESTION MUST BE EVALUATED IN LIGHT OF THE SPECIFIC FACTS AND CIRCUMSTANCES. WHETHER SUCH RULES SATISFY THESE STANDARDS IS A QUESTION OF FACT WHICH CANNOT BE ANSWERED IN AN OPINION OF THE ATTORNEY GENERAL. 74 O.S. 18B(E) THE SECOND QUESTION REGARDING WHETHER A TEACHERS' UNION CAN REQUIRE THE LOCAL SCHOOL BOARD TO NEGOTIATE THE DRESS CODE POLICY WITH THE UNION IS PRIMARILY GOVERNED BY 70 O.S. 509.6 (1991). SECTION 509.6, WHICH RESEMBLES 29 U.S.C.A. 159(A) OF THE NATIONAL LABOR RELATIONS ACT, STATES THAT "THE BOARD OF EDUCATION AND THE REPRESENTATIVES OF THE ORGANIZATION MUST NEGOTIATE IN GOOD FAITH ON WAGES, HOURS, FRINGE BENEFITS AND OTHER TERMS AND CONDITIONS OF EMPLOYMENT." (EMPHASIS ADDED.)
LOOKING TO THE LANGUAGE OF 70 O.S. 509.6 AND APPLYING ACCEPTED RULES OF STATUTORY CONSTRUCTION, WE NOTE THAT THE LEGISLATURE HAS USED THE PHRASE "MUST NEGOTIATE" IN DESCRIBING THE DUTY TO BARGAIN. THE TERM "MUST" IDENTIFIES A MANDATORY DUTY.
A.G. OPIN. 87-021
CONSEQUENTLY, IF THE DRESS CODE POLICY IS FOUND TO BE A TERM OR CONDITION OF EMPLOYMENT WITHIN THE MEANING OF 70 O.S. 509.6, THE DRESS CODE POLICY IS A MANDATORY SUBJECT OF BARGAINING.
DECIDING WHETHER A DRESS CODE POLICY WOULD BE CONSIDERED A TERM OR CONDITION OF EMPLOYMENT IS A TROUBLESOME TASK. "TERMS AND CONDITIONS OF EMPLOYMENT IS OBVIOUSLY A CATCHALL PHRASE INTO WHICH ALMOST ANY PROPOSAL MAY FALL, AND THE MAJORITY OF BARGAINING CASES, COVERING TOPICS WHICH RANGE FROM BUDGETS TO JOB PROMOTION TO JOB SECURITY, AND THE LIKE, HAVE ARISEN UNDER THIS PARTICULAR STATUTORY PROVISION." 84 A.L.R.3D 242, 250 (1978).
NO OKLAHOMA CASE LAW HAS ADDRESSED THE QUESTION OF WHAT CONSTITUTES A TERM OR CONDITION OF EMPLOYMENT UNDER 70 O.S. 509.6. HOWEVER, IN OTHER JURISDICTIONS CASES ABOUND ON BOTH SIDES OF THE ISSUE. AFTER CAREFUL EXAMINATION OF THE CASES SUPPORTING EITHER POSITION, IT APPEARS THAT THOSE CASES ARE DISTINGUISHABLE ON THE FACTS AND DO NOT CREATE A CLEAR LINE OF AUTHORITY. MOST OF THESE CASES PIVOT ON THE PARTICULAR FACTUAL SITUATION INVOLVED. THE CASES RANGE FROM INTERPRETING THE LANGUAGE BROADLY (SEE WESTINGHOUSE ELECTRIC CORPORATION 387 F.2D. 542 (4TH CIR.(1967)) TO CASES INTERPRETING THE STATUTORY LANGUAGE VERY NARROWLY (SEE LAW ENFORCEMENT LABOR SERVICES 449 N.W. 2D 725 (MINN.1990)).
IN WESTINGHOUSE ELECTRIC CORPORATION V. N.L.R.B., 387 F.2D. 542 (4TH CIR.1967) THE ISSUE WAS WHETHER INCREASES IN FOOD PRICES ESTABLISHED BY AN INDEPENDENT CONTRACTOR OPERATING CAFETERIAS IN WESTINGHOUSE PLANTS WAS A MANDATORY SUBJECT FOR COLLECTIVE BARGAINING BETWEEN WESTINGHOUSE AND THE SALARIED EMPLOYEES ASSOCIATION. A MAJORITY OF THE NATIONAL LABOR RELATIONS BOARD (N.L.R.B.) HELD THAT CAFETERIA PRICES WERE "CONDITIONS OF EMPLOYMENT." IN EFFECT THE N.L.R.B. HELD THAT THE STATUTORY WORDING "TERMS AND CONDITIONS OF EMPLOYMENT" IS INTENDED BY CONGRESS TO BE USED IN ITS "BROADEST SENSE AND ENCOMPASSES VIRTUALLY EVERYTHING WHICH BEARS ON THE EMPLOYMENT RELATIONSHIP AND TO WHICH WORKERS SEEK MANAGEMENT'S AGREEMENT."
ON THE OTHER HAND AN EQUALLY IMPRESSIVE NUMBER OF COURTS INTERPRETING "OTHER CONDITIONS OF EMPLOYMENT" HAVE REACHED CONCLUSIONS THAT EMPLOYERS ARE NOT REQUIRED TO NEGOTIATE EVERY ITEM AFFECTING EMPLOYMENT. SEE, E.G., ABERDEEN EDUCATION ASSOC. V. ABERDEEN BOARD OF EDUCATION 215 N.W.2D 837 (S.D. 1974). THE ABERDEEN COURT DEFINED "OTHER CONDITIONS OF EMPLOYMENT" AS CONDITIONS OF EMPLOYMENT WHICH MATERIALLY AFFECT RATES OF PAY, WAGES, HOURS OF EMPLOYMENT, AND WORKING CONDITIONS. ID. AT 841.
ANOTHER EXAMPLE OF NARROW INTERPRETATION IS LAW ENFORCEMENT LABOR SERVICE, INC. V COUNTY OF HENNEIN, 449 N.W. 2D 725 (MINN.1990). THE LABOR UNION REPRESENTING EMPLOYEES OF THE COUNTY SHERIFF'S DEPARTMENT SOUGHT AN INJUNCTION ON THE BASIS THAT GROOMING POLICY WAS A TERM AND CONDITION OF EMPLOYMENT WHICH COULD BE IMPOSED ONLY THOUGH CONTRACT NEGOTIATION. THE DISTRICT COURT HELD THAT THE SHERIFF'S DEPARTMENT COULD UNILATERALLY IMPOSE GROOMING POLICY AND THE UNION APPEALED. THE COURT OF APPEALS REVERSED THE DECISION. HOWEVER, ON APPEAL THE MINNESOTA SUPREME COURT HELD THAT GROOMING POLICY WAS NOT SUBJECT TO MANDATORY BARGAINING UNDER THE STATE STATUTE.
IN SCHOOL DIST. OF SEWARD EDUCATION ASSOC. V. SCHOOL DIST. OF SEWARD, 199 N.W.2D 752 (NEB.1972) THE COURT STATED THAT
 "(G)ENERALLY TEACHER ORGANIZATIONS HAVE GIVEN THE TERM "CONDITIONS OF EMPLOYMENT" AN EXTREMELY BROAD MEANING, WHILE BOARDS OF EDUCATION HAVE TRIED TO RESTRICT THAT TERM TO PRESERVE THEIR MANAGEMENT PREROGATIVES AND POLICY-MAKING POWERS. WHILE THERE ARE MANY NEBULOUS AREAS THAT MAY OVERLAP WORKING CONDITIONS, BOARDS SHOULD NOT BE REQUIRED TO ENTER NEGOTIATIONS ON MATTERS WHICH ARE PREDOMINATELY MATTERS OF EDUCATIONAL POLICY, MANAGEMENT PREROGATIVES, OR STATUTORY DUTIES OF THE BOARDS OF EDUCATION."
ID. AT 759.
THE COURTS IN OKLAHOMA HAVE NOT SPECIFICALLY RULED ON THE ISSUE OF TEACHER DRESS CODE POLICY. FURTHERMORE, THERE APPEARS TO BE NO PLURALITY AMONG OTHER JURISDICTIONS ON WHETHER A DRESS CODE POLICY SHOULD BE A MANDATORY TOPIC OF BARGAINING.
BECAUSE OKLAHOMA COURTS HAVE NOT DEALT WITH TERMS OR CONDITIONS OF EMPLOYMENT WITHIN THE CONTEXT OF MANDATORY BARGAINING, THERE IS NO GUIDANCE FROM OKLAHOMA LAW REGARDING A TEACHER DRESS CODE POLICY IN THAT SETTING. FURTHERMORE, THERE IS A WIDE DIVERGENCE AMONG OTHER JURISDICTIONS WHICH HAVE RULED ON THE ISSUE AS TO WHAT CONSTITUTES A TERM OR CONDITION OF EMPLOYMENT. THUS, WHETHER A TEACHERS' UNION CAN REQUIRE A BOARD OF EDUCATION TO NEGOTIATE A TEACHERS' DRESS CODE POLICY HAS NO CLEAR ANSWER IN THE LAW.
IT IS THEREFORE THE OPINION OF THE UNDERSIGNED ATTORNEY THAT NOTHING IN THE UNITED STATES CONSTITUTION, APPLICABLE STATUTES OR OKLAHOMA CASE LAW PROHIBITS A SCHOOL DISTRICT FROM IMPLEMENTING A DRESS CODE POLICY FOR EMPLOYEES. HOWEVER, THE RESOLUTION OF THIS QUESTION NECESSARILY INVOLVES FACTUAL DETERMINATIONS THAT THIS OFFICE MAY NOT MAKE. 74 O.S. 18B(E). TO BE VALID, A DRESS CODE MUST HAVE A REASONABLE CONNECTION TO THE EDUCATION FUNCTION, AND IT MUST BE NECESSARY TO CREATE AND PRESERVE A PROPER ATMOSPHERE FOR LEARNING. LIKEWISE, THE QUESTION OF WHETHER DRESS CODE POLICY IS A MANDATORY SUBJECT OF BARGAINING CANNOT BE ANSWERED AS A MATTER OF LAW. THERE IS NEITHER OKLAHOMA CASE LAW NOR A PLURALITY AMONG OTHER JURISDICTIONS ON THIS ISSUE. THE QUESTION IS ONE WHICH MUST BE DETERMINED ON THE FACTS AND CIRCUMSTANCES OF A PARTICULAR CASE.
(L. MICHELLE STEPHENS)